BESSIE TURNEY, etc., Respondent, v. UNITED RAILWAYS COMPANY OF ST. LOUIS. Appellant.

St. Louis Court of Appeals, February 21, 1911.

1. JURY: City of Over One Hundred Thousand Population: Qualification of Jurors: Service Within Twelve Months. Section 7353, of article 5, chapter 64, Revised Statutes 1909, relating to juries in cities of over one hundred thousand inhabitants, contemplates that jurors are to serve for such time as the court directs, and the mere fact that a juror may have served on one or more panels during the time for which he was summoned is not sufficient to disqualify him, under section 7342, but in order to be disqualified under that section he must have served in some court in this state within twelve months next preceding the period of his present term of service.

155 App.—33

2. **STREET RAILWAYS: Private Right of Way: Excessive Speed: Failure to Give Signal.** A street railway company may operate its cars on a private right of way at whatever speed it sees fit, provided it does not endanger passengers; and need not sound a gong or signal of a car's approach, unless the conditions that obtain are such as to suggest the exercise of ordinary care for the rights of persons probably on or about the tracks.

3. **STREETS: Existence of, as Traveled Thoroughfares: Sufficiency of Proof: Street Railways.** In an action for injuries resulting from a collision of a street car operated on a private right of way with an automobile in which plaintiff was riding, evidence *held* to show that the avenue, at the intersection of which with the private right of way the collision occurred, was a traveled public thoroughfare in the city of St. Louis.

4. **STREET RAILWAYS: Crossing Collision: Excessive Speed: Facts Stated.** Defendant's double tracks, constructed on its own right of way, cross Clarendon avenue, a public traveled street in the city of St. Louis, running north and south; west-bound cars running on the north track. The cars are obscured, upon approaching the avenue, by buildings erected within ten feet of the rails on either side, and the tracks approaching it from the east curve sharply, so that west-bound cars cannot be seen by one standing on the north rail of the track in the avenue until within sixty-five to one hundred feet from that point. In an action for injuries resulting from a collision at said crossing between a west-bound street car and an automobile in which plaintiff was riding, *held*, that ordinary care required that cars be operated at a reasonable rate of speed as they approached said crossing, so that the motorman could control them and thereby obviate the danger to persons passing over the crossing.

5. ———: ———: ———: **Question for Jury.** Where, in such case, the car which collided with plaintiff's automobile was at the time running between twenty-five and thirty miles an hour, the question of whether the speed of the car was excessive, so as to make it negligence, was for the jury.

6. ———: ———: **Failure to Give Signals.** Where persons are known to be passing on a street where it crosses over street railway tracks and their view of an approaching car is obscured to a considerable extent by obstructions, the exercise of ordinary care requires the giving of warning of the approach of a car, by gong or otherwise.

7. ———: ———: ———: **Sufficiency of Evidence: Negative Evidence.** In an action for injuries resulting from a collision between a street car and an automobile in which plaintiff was

riding, evidence of witnesses who were in a position to have heard the gong, if it had been sounded, that they did not hear it sounded was sufficient to warrant the submission to the jury of the issue, whether or not the gong was sounded.

8. ———: ———: **Contributory Negligence: Jury Question.** In an action for injuries by the collision at a crossing of a street car operated on its own right of way with an automobile in which plaintiff was riding, whether plaintiff exercised due care for her own safety *held* a question for the jury.

9. **NEGLIGENCE: Imputed Negligence: Negligence of Driver Not Imputable to Guest.** The negligence of a driver of an automobile in which plaintiff, a young girl, was riding when it was struck by a street car could not be imputed to her, in an action brought by her against the street railway company, where the driver was not under her control and she was, in fact, his guest.

Appeal from St. Louis City Circuit Court.—*Hon. Hugo Muench*, Judge.

AFFIRMED.

*Glendy B. Arnold* for appellant; *Boyle & Priest* of counsel.

(1) The court erred in overruling defendant's challenge of juror Cohn. R. S. 1909, sec. 7342; Williamson v. Transit Co., 202 Mo. 345. (2) The demurrer to the evidence should have been sustained. (a) There was no evidence to show that the failure to sound the gong was negligence, or that such failure caused plaintiff's injuries. King v. Railroad, 211 Mo. 1; Heinzle v. Railroad, 182 Mo. 528; Frank v. Railroad, 112 Mo. App. 506. (b) There is no evidence that the speed of the car was negligent. Trigg v. Railroad, 215 Mo. 522. (c) There is no evidence that the speed of the car, if it was negligent, was the cause of plaintiff's injuries. Peterson v. Railroad, 156 Mo. 552; King v. Railroad, 211 Mo. 1; Molyneux v. Railroad, 81 Mo. App. 25; Bluedorn v. Railroad, 121 Mo. 258. (3) Plaintiff's negligence bars her right to recover on the ground of negligent speed and failure to sound the gong. Fechley v. Rail-

road, 119 Mo. App. 358; Fry v. Transit Co., 111 Mo. App. 324; Barry v. Transit Co., 102 Mo. App. 89; King v. Railroad, 211 Mo. 1; Peterson v. Railroad, 156 Mo. 552; Brockschmid v. Railroad, 205 Mo. 435; Ries v. Railroad, 179 Mo. 1; Porter v. Railroad, 199 Mo. 82. (4) Plaintiff's statement that she looked and listened is not to be considered in this case. Hook v. Railroad, 162 Mo. 569; Payne v. Railroad, 136 Mo. 562; Sanguinet v. Railroad, 196 Mo. 466. (5) Plaintiff was bound to look and listen and, if necessary, to stop for that purpose. Hook v. Railroad, 162 Mo. 569; Sanguinet v. Railroad, 196 Mo. 466. (6) Plaintiff's first instruction is erroneous because it submits questions of law to the jury, without advising the jury as to what facts would constitute a negligent failure to sound the gong or negligent speed in the operation of the car. Ayers v. Railroad, 190 Mo. 228, 237. (7) Plaintiff's first instruction is erroneous because it submits the issue of negligent speed to the jury without any evidence to sustain that charge. Heinzle v. Railroad, 182 Mo. 528. (8) Plaintiff's first instruction is erroneous because it submits the issue of negligent failure to sound the gong without any evidence to sustain that charge. Heinzle v. Railroad, 182 Mo. 528, 559.

*Robert L. McLaran* for respondent.

(1) Defendant's challenge of juror Cohn was properly overruled. Section 7342, R. S. 1909, does not apply to jurors who are summoned to do jury duty for a stated term, and have served as jurors in the trial of a previous case during that term of service. Ch. 64, art. 5, Rev. Stat. 1909. (2) The demurrer to the evidence was properly overruled. (a) A demurrer to the evidence should only be sustained where there is no evidence which either directly or by reasonable inference supports plaintiff's case. Every reasonable inference must be indulged in favor of plaintiff. Williamson v. St. Louis Transit Co., 202 Mo. 345. (b) The evidence

tends to show that defendant's failure to ring the bell was negligence, and that such failure caused plaintiff's injuries. Stotler v. Railroad, 200 Mo. 138. (c) The evidence tends to show that the speed of the car was negligent, and that such negligent rate of speed caused plaintiff's injuries. Murrell v. Railroad, 105 Mo. App. 88; Kolb v. St. Louis Transit Co., 102 Mo. App. 143. (d) The violation of a city ordinance regulating the speed of street cars is negligence *per se.* Laun v. Railroad, 216 Mo. 563. (e) The causal connection between the negligence and the injury need not be shown by direct evidence, but may be inferred from the facts and circumstances. Dumphy v. Stock Yards Co., 118 Mo. App. 516; Stotler v. Railroad, 200 Mo. 136; Cambron v. Railroad, 165 Mo. 558; Settle v. Railroad, 127 Mo. 341. (3) Plaintiff's action is not barred by reason of contributory negligence on her part. (a) There is no evidence of any negligence on the part of plaintiff. (b) The burden of proving contributory negligence is upon defendant. Van Trebra v. Gaslight Co., 209 Mo. 648. (c) The negligence of the driver of a vehicle will not be imputed to a passenger in such vehicle, unless some relation exists between the driver and the passenger enabling the latter to control or influence the former. Stotler v. Railroad, 200 Mo. 107; Peterson v. Transit Co., 199 Mo. 33; Zalotuchin v. Railroad, 127 Mo. App. 577; Burleigh v. Transit Co., 124 Mo. App. 724. (d) The question of contributory negligence should be submitted to the jury, except in cases where it is apparent to all reasonable men from the undisputed evidence that plaintiff has failed to exercise ordinary care for his own safety. Combs v. Kirksville, 134 Mo. App. 645. (4) Plaintiff's first instruction is free from error. (a) It submits the ultimate facts in issue to the jury without commenting on the evidence. Phippin v. Railroad, 196 Mo. 347. (b) The issue of negligent speed submitted by this instruction is sustained by the evidence. Murrell v. Railroad, 105 Mo. App. 88. (c) The issue of

negligent failure to ring the bell submitted by this instruction is sustained by the evidence. Stotler v. Railroad, 200 Mo. 138.

NORTONI, J.—This is a suit for damages accrued to plaintiff through the alleged negligence of defendant in propelling its street car upon her. Plaintiff recovered and defendant prosecutes the appeal.

The first argument advanced for a reversal of the judgment relates to the ruling of the court in denying defendant's challenge for cause of a juror, Moses Cohn, who had been regularly summoned for jury service for the period of one week, as is usual in the St. Louis Circuit Court, and had served as a juror on one panel during such week, but at no other time during one year next prior to the week mentioned. The challenge was made on the ground that the juror was disqualified perforce of the statute (sec. 7342, R. S. 1909), which provides, substantially, that any person who has served on any jury in any court of the state within twelve months next preceding shall be excused by the court if challenged for that cause. On this question, the trial court expressed its views in writing as follows:

"On his *voir dire,* this juror admitted that he had served on a prior jury in the same room, *in the same week,* and during the service which he was then absolving according to his regular summons. The challenge 'for cause' was overruled, defendant saved an exception.

"Defendant relies entirely upon the case of Williamson v. Transit Co. (202 Mo. 345, 355, 365, et seq.), while plaintiff denies the application of that case, and points to certain features which are claimed to differentiate the two cases; and further asserts that what was said in the Williamson case is practically *obiter dictum.*

"It is the effort of the law to furnish in civil cases, a panel of *eighteen qualified men,* from which either party may strike three,—not because they are disqualified, but for any reason deemed sufficient, and *peremp-*

*torily.* Such is the reasoning of our appellate courts as indicated in the leading cases of Theobald v. Transit Co., 191 Mo. 395, 416; Billmeyer v. Same, 108 Mo. App. 6, and that reasoning seems conclusive.

"In my opinion, the qualification of the juror Cohn must be determined upon the facts appearing in this case, and the entire provisions of Art. V., chap. 64, R. S. 1909 on 'Juries in cities with over 100,000 inhabitants.'

Section 7353 of that Article provides (*inter alia*) —

"*Time and length of service of juror*: Each of said courts hereinbefore referred to may direct, from time to time, the number of jurors to be summoned for said court, and how long they shall be summoned before their attendance shall be required, *and how long they shall serve,* and may make all rules and orders by it deemed proper touching the jury service of the court, not inconsistent with the provisions hereof, and may enforce the same,' etc.

"This section was not before the Supreme Court, nor considered by it, apparently, in the decision of the *Williamson* case; neither was such consideration called for, because that case involved the direct question only regarding a juror who had served at *another term,* but during the preceding year. Sections 7342-7353, being not only in *pari materia,* but parts of the same act, must needs be construed together, and from the pregnant terms of each the legislative intent must be gathered. We cannot place so low an estimate upon legislative intelligence as to assume that its members were unfamiliar with the immemorial custom of summoning jurors in this city for *service by the week;* or that they intended the issuance of fresh venires in the midst of the jury trials of a week, whenever it might suddenly happen that even the last discarded juror had been sworn upon a panel. It could not have been their conscious purpose to afford a wary litigant, unwilling for some reason of his own to meet an adversary ready for the assertion of his supposed rights, an opportunity in the

later days of each week to paralyze the activity of the trial court, and thus force an unwilling and unjust continuance. To me it seems plain beyond controversy that when the Legislature granted (e. g. recognized) the power to the trial courts of this city to determine as to jurors 'how long they shall serve,' they employed those terms not with reference to the length of service *in one case*, but subjected them to *all* service that might be required of them during the term fixed, whether involving the determination of one case or a dozen. Hence, the words of sec. 7342, 'who has served on any jury in any court of this state within twelve months next preceding,' derive a distinct meaning as illuminated by the later section, and must be held to have reference to such a 'service' as the court by its order shall have fixed for the time being.

"This construction will also accord to these enactments some potency towards the correction of evils at which they were manifestly aimed. Upon the one hand, it was felt that to require a week's service as juror in either the civil or criminal divisions of our Circuit Courts oftener than once a year was the imposition of too great a burthen upon the average citizen. Upon the other hand it seemed desirable to more completely avoid the dangers of having the lists filled with either regular jurors or 'talesmen' who at one time made a profession of that sort of 'service.'

"Feeling that the Williamson case in nowise decides or precludes the point raised in this case, and that when considered as a new contention it is not well made, I must refuse to disturb the verdict."

In the views of Judge MUENCH, so lucidly expressed, we fully concur, for it appears to be entirely clear that the several statutes, when read together, contemplate that the juror is to serve for such a time as the court directs in obedience to the summons for the present term. In other words, the mere fact that the juror may have served on one or more panels during the term is not sufficient to disqualify him, unless he

has served in some of the courts of the state within twelve months next preceding the period of his present term of service. Such term of service is the "service" contemplated by the statute in forbidding further service of the same juror until a period of twelve months has elapsed. See also to the same effect the opinion of the Springfield Court of Appeals in Blyston-Spencer v. United Rys. Co. of St. Louis, 152 Mo. App. 118, 132 S. W. 1175, and of this court in Kaiser v. United Rys. Co. of St. Louis, 155 Mo. App. 428, 135 S. W. 90.

Plaintiff is a minor and sues by her next friend, Chappell, duly appointed and qualified. Plaintiff received her injury through the collision of defendant's street car on the Hodiamont line at the crossing of Clarendon avenue in St. Louis with an automobile in which she was riding in company with a young gentleman friend about twenty years of age, who was operating the automobile.

The court by instructions referred the matter of excessive speed of the street car and the motorman's failure to sound the gong on approaching the crossing of Clarendon avenue to the jury, as predicates of liability, and it is argued by defendant that it erred in so doing. It is urged in the argument that the court should have directed a verdict for defendant at its request for the reason there is no proof Clarendon avenue is a public thoroughfare of the city or that it is so circumstanced as to require either a sounding of the gong or the operation of the car at a reasonable rate of speed at common law. In this connection, it should be said that, though a speed ordinance of the city was introduced in evidence by plaintiff, it is not relied upon for a recovery and was given in evidence only as tending to prove what would be a reasonable rate of speed at the point in question. This ordinance limits the speed of street cars at the point in question to fifteen miles an hour, but this is immaterial except for the purpose suggested, as the petition counts on common law negligence

only. By reference to the requirements of the common law with respect to the duty resting on defendant to operate its car at a reasonable rate of speed and sound the gong at some places, the circumstances of the case are to be considered, for no one can doubt that, on a private right of way, such as that of defendant in the present case, the railroad may operate its cars at whatever speed it sees fit, so as not to endanger the passengers thereon, and this, too, without sounding a gong or signal of its approach, unless the circumstances of the situation are such as to suggest the precept of ordinary care for the rights of others probably present on or about its tracks. In this view, it is of course material to inquire into the *locus in quo* of the collision, to the end of ascertaining whether or not the exercise of ordinary care on the part of defendant required it to anticipate, as within the range of reasonable probability, that the safety of persons would likely be threatened by the unduly rapid approach of the street car upon the crossing of Clarendon avenue without warning or signal, and, of course, in this connection the fact as to whether or not Clarendon avenue is a traveled thoroughfare of a great city is highly important, though not wholly essential to defendant's obligation and the ascertainment of its breach in the premises. All of the evidence goes to the effect that plaintiff, in company with her companion, was about to go upon defendant's car tracks in Clarendon avenue when its car approached from the eastward on its private right of way, through the alley, without sounding a gong or other warning, at a rate of speed between twenty-five and thirty miles an hour and ran upon the automobile in which she was riding. But no one expressly stated that Clarendon avenue was a street or thoroughfare of the city of St. Louis, though it is directly proved to be a made and traveled street. No witness said the collision occurred in St. Louis, but it seems there is an abundance of collateral facts and circumstances in the case from which such may be in-

ferred. Witnesses spoke of Academy avenue, Morgan street, Grand avenue, Clarendon avenue and other well-known thoroughfares of the city with a familiarity and manner of expression indicating that all of those streets were thoroughfares of the same city. It was shown that Clarendon avenue, on which the collision occurred, is an open street, made and traveled, and that immediately over the center of the crossing of the car tracks therein defendant maintained a sign of large proportions proclaiming by means of electric lights therein the fact of the crossing of a street with its railroad and suggesting danger. It appears, too, that numerous buildings are along either side of Clarendon avenue; that these buildings are erected to within ten feet of defendant's double track railroad which crossed Clarendon avenue from east to west. A drug store and other business houses are mentioned and described in the evidence as standing on each of the four corners at the place in question and it is shown that numerous pedestrians were either standing on the corners or present along that street when plaintiff received her injury. That Clarendon avenue is shown to be thirty-five feet in width between the curbs and that there is a public crossing over defendant's tracks therein for conveyances the full width of the street is unquestioned. Besides, it appears an ordinance of the city of St. Louis dividing the city into certain districts and prescribing the speed of street cars in these several districts was introduced in evidence by plaintiff, and defendant's counsel expressly admitted that Clarendon avenue was in the "outer district" defined in such ordinance. These facts and circumstances, together with the admission of counsel, are certainly sufficient to constitute substantial evidence of the fact that Clarendon avenue is a public thoroughfare of the city of St. Louis and as such is much traveled and frequented at the point in question by persons and vehicles. Putting aside the fact defendant expressly admitted it to be within the purview of the ordinance of the city

of St. Louis and in the "outer district" defined thereby, which of itself is quite conclusive, it has been determined by both this court and the Supreme Court that the venue in a criminal case may be inferred by the jury from the frequent mention and description of well-known streets and other public places in the city. Especially is this true in those cases where the fact of the *locus in quo* is not denied and seems to be treated throughout as conceded for the purpose of the case. In such circumstances, it is said by the Supreme Court that slight proof, sufficient only to raise a violent presumption, will be regarded as sufficient. [State v. Burns, 48 Mo. 438; State v. Schatt, 128 Mo. App. 622, 107 S. W. 10; State v. Ruth, 14 Mo. App. 226.]

It thus appears that Clarendon avenue is a public traveled street of a great city, and runs north and south, and defendant's car tracks cross it from east to west. Defendant maintains two tracks a few feet apart, which run parallel, east and west. The west-bound cars occupy the track farthest north and the east-bound cars that on the south. The street cars are propelled by electric power and they are obscured, upon approaching Clarendon avenue, by buildings which are erected on that street to within ten feet of the rail of the tracks on either side. Furthermore, as defendant's tracks approach Clarendon avenue from the eastward, they make a sharp curve from a point at the southeast, so that cars thereon may not be observed by one standing on the north rail of the track in Clarendon avenue until they are within sixty-five to one hundred feet of the street. The same condition prevails as to cars from the west, for immediately upon crossing Clarendon avenue the car tracks curve decidedly to the northward. In these circumstances, no one can doubt that the requirements of ordinary care afforded by the common law alone suggest that defendant should operate its car at a reasonable rate of speed when approaching such a crossing, to the end that the motorman may control it and obviate such dangers as in-

here in the circumstances of a public crossing in a great city where persons are known to be frequently passing to and fro. [Brandt v. United Rys. Co., 153 Mo. App. 161, 132 S. W. 39.] The same requirement obtains as to the matter of sounding the gong or other proper warning of the approach of the car, for where persons are known to be passing on the street and the view is thus obscured to a considerable extent, the most fundamental principles of the law suggest ordinary care is not exercised for their safety unless a proper warning is given. [Zalotuchin v. Met. St. R. Co., 127 Mo. App. 577, 106 S. W. 548.] The proof is uncontradicted to the effect that the car which inflicted plaintiff's injury was moving to the westward at a rate of speed between twenty-five and thirty miles an hour and it was certainly proper to refer the matter of excessive speed to the jury in the circumstances of the case as a predicate of liability if such be found to be the fact. But defendant insists there is no evidence that the gong was not sounded and the court erred as to submitting this matter. We are not so persuaded for it appears that four witnesses who were present at the place of the injury said they did not hear a gong or other signal of the approach of the car and they were in a position to hear if it were sounded. That the gong was not sounded is of course a negative matter and one which is not always susceptible of affirmative proof, but it is well settled that such a negative fact may be proved by negative statements of the witnesses as in this case, and the weight and value of such negative evidence is for the jury alone to consider. If it appear the witness was in a position to hear and says he heard no gong, the matter will be treated as substantial evidence on this score by the appellate court. [Stotler v. C. & A. R. Co., 200 Mo. 107, 98 S. W. 509.]

It is argued the court should have directed a verdict for defendant on the ground of plaintiff's contributory negligence alone, for she admitted she knew the car tracks were there, and they afford a presumption of

danger in every instance. We are not impressed with this argument, for, though plaintiff knew the automobile was approaching the car track, the evidence sufficiently tends to prove that she exercised ordinary care for her own safety to render the question one for the jury. The date and hour of the collision were January 5th at about 6:30 in the evening after darkness had fallen. Plaintiff is a young girl. At the time she was just approaching her fifteenth birthday. She was riding on the front seat of the automobile which was operated by a young man of twenty years of age. The automobile was owned by the aunt of both plaintiff and her companion, though it appears the young people are not cousins, and it is entirely clear that he was not her servant or otherwise within her control. The proof shows that just prior to reaching the track plaintiff suggested to her companion who was operating the machine to be careful as they were approaching the crossing of the tracks, whereupon the driver reduced the speed of the machine to about three or four miles an hour and both she and he looked and listened for the approach of a car as they neared the crossing and even after they passed the building line. Immediately before the forward wheels of the automobile approached upon the north rail of the west-bound track, defendant's car, which it is said bore no headlight, came into view from the private right of way through the alley running at a rate of speed said by the bystanders to be between twenty-five and thirty miles an hour. The driver instantly turned the automobile to the westward, hoping to avert a castastrophe, but the street car collided with it in the rear and shoved it about twenty-five feet to the westward when a car came around the curve from the west and crushed the machine between the two inflicting serious injuries on plaintiff. It is to be remembered in this connection that the view of both plaintiff and her companion to the eastward was obscured, even after passing the building line, for more than a very slight distance, because of the abrupt curve

of defendant's car tracks to the south, and it does not appear that plaintiff or her companion knew of this abrupt curve in the track at the time. Even if plaintiff's companion who operated the automobile should be declared negligent as a matter of law on this state of facts, on which question no opinion is given but on the contrary is expressly reserved, it is obvious his want of care may not be imputed to plaintiff. That plaintiff exercised due care for her own safety in the circumstances of the case is sufficiently shown by the proof to render the question as to her one for the jury; for besides cautioning her companion in due time, she looked and listened as well, but neither saw the car, because of the curve, nor heard it, because of the noise of the engine attached to the automobile. The driver of the automobile was not her servant nor was he in any manner under her control, and considering the fact of her youth, we believe he should be regarded as her protector and she his guest though they were nephew and niece of the same aunt, who owned the automobile. In such circumstances, it is entirely clear that though he was remiss as to the requirements of the law for his own safety, his conduct in that behalf is not to be imputed to plaintiff so as to preclude her right of recovery as a matter of law. [Connor v. Wabash R. Co., 149 Mo. App. 675, 129 S. W. 777, 780, 781; Fechley v. Springfield Traction Co., 119 Mo. App. 358, 96 S. W. 421; Stotler v. C. & A. R. Co., 200 Mo. 107, 98 S. W. 509; Zalotuchin v. Met. St. R. Co., 127 Mo. App. 577, 106 S. W. 548.]

We have examined plaintiff's instructions, considered the criticisms thereon and find them sufficient. It is unnecessary to prolong the opinion with further discussion as to them as the merits of the argument touching the instructions is fully considered in what has been said.

The judgment should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Caulfield, J.,* concur.