FANNIE EBERT, Administratrix of the Estate of WILLIAM F. STEINBRINK, Respondent v. METROPOLITAN STREET RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, October 6, 1913.

1. NEGLIGENCE, CONTRIBUTORY: Imputed Negligence: Jury Question. Deceased was a lad fifteen years of age. In company with a full grown man, who acted as driver, he rode in a wagon out of a livery stable down an inclined runway to the street upon the track twenty-two and one-half feet away from the starting point, and was there struck and killed. He had no authority or control over the horse, driver or wagon. In such case, if the driver was negligent it cannot be imputed to the boy. There was nothing to cause the boy to anticipate that the horse would go or be driven rapidly upon the track, and the short distance the wagon went before being struck, and the suddenness with which the danger arose, will prevent the appellate court from holding the boy guilty of contributory negligence as matter of law. If there was any evidence showing negligence, or from which it could be inferred, the question of contributory negligence would be for the jury.

2. ———: ———: **Instructions.** An instruction attempting to submit the issue of deceased's contributory negligence to the jury should not confuse the non-imputable contributory negligence of the driver with that claimed against deceased since to do so is to confuse and mislead the jury as to the facts from which they could infer contributory negligence against the boy. The refusal of such an instruction is not error.

3. ———: ———: ———. It is not error to refuse an instruction withdrawing from the jury one of the grounds of negligence·charged if there is any evidence showing such grounds or from which it can reasonably be inferred. Neither is it error to refuse an instruction telling the jury that recovery cannot be had unless a specified ground was the sole cause of the injury, where other grounds were specified and the injury may have been caused by the several grounds combined.

4. ———: ———. ———. An instruction is erroneous, and is therefore properly refused, which tells the jury that the conduct of the motorman just prior to the collision and the speed of the car at that time are "immaterial" if the car was not going more than twenty miles per hour. The conduct of the motorman and the speed of the car just prior to a critical instant are material as throwing light on what was the probable conduct and speed at that instant.

5. ———: ———: **Accident.** It is not error to refuse an instruction saying that defendant was not liable if the death was caused solely by an unfortunate accident. Such instruction was not applicable to the facts in this case since it ignored the real issue, namely, the presence or absence of care on the part of defendant and did not define or explain the meaning of the term accident.

6. ———: ———: **Burden of Proof.** Where the court has given a correct instruction on burden of proof it is not error to refuse another instruction on that subject a little more strongly worded in defendant's favor.

7. **TRIAL PRACTICE: Witnesses: Impeachment by Contradiction.** Where it is desired to contradict a witness by proving contradictory statements made in a prior ·written account of the affair, the witness must be shown such statement and his attention called to the contradictory statement, before it can be offered in evidence to impeach him. Where the evidence shows that the witness did' not write the statement but merely signed it without reading, simply showing the witness his signature and getting him to identify it is not sufficient to render the statement admissible. Its exclusion; therefore, was not error.

· Appeal from Jackson Circuit Court.—*Hon. Jas. A. Guthrie*, Judge.

AFFIRMED.

*John H. Lucas* and *T. B. Buckner* for appellant.

*Brewster, Kelley, Brewster & Buchholz* and *Ben R. Estill* for respondent.

TRIMBLE, J.—William Steinbrink, an unmarried minor, fifteen years of age, whose parents were dead, was injured by one of defendant's street cars striking and overturning a grocery wagon in which he was riding. He died as a result of his injuries, and his executrix instituted this suit under section 5425, Revised Statutes of Missouri 1909. She obtained judgment and defendant has appealed.

The lad had started to work that morning for a grocer, and, in company with Bert Hosman, a man who drove the grocer's delivery, went to a livery stable to get the horse and wagon with which groceries were delivered. This stable fronted west immediately on the property line on the east side of Indiana avenue in Kansas City, Missouri, and was 223 north of the intersection of said avenue with Twenty-sixth street. The stable floor was higher than the sidewalk, and a runway sixteen feet in length extended from the floor to the street at the curb. Down this runway vehicles were driven in leaving the barn.

Indiana avenue was forty feet wide and the east track of defendant's car line was twenty-two and one-half feet from the barn entrance. When Coontz, the stable hand, had harnessed the horse to the wagon, Hosman took the driver's seat, and with, the boy either sitting beside him or standing in the wagon behind and holding to the seat, drove down this runway to the street. The wagon had almost cleared the track

when a northbound street car struck the rim of the left rear wheel overturning the wagon and injuring the boy.

From Twenty-sixth street north it was down grade on Indiana avenue, and at a point twenty-five feet north of said street and 198 feet south of the livery barn was a "safety stop" which required all north bound cars to make a stop at that point before proceeding further.

The negligence charged was that the car was being run at a dangerous rate of speed in excess of twenty miles per hour and in violation of an ordinance limiting the speed to that rate; also that no safety stop was made at the point required, and that the operator of the car saw, or, by the exercise of ordinary care, could have seen, deceased in a perilous situation in time to have stopped or slackened the car with safety to the passengers and avoided the injury, but that he negligently failed to do so. The answer was a general denial and a plea of contributory negligence on the part of the driver and of deceased in driving rapidly from the barn to the track without looking or listening for the approach of a car and so close in front thereof as to render a collision unavoidable.

Appellant's first point is that no proof was made that deceased was an unmarried minor. But the record shows to the contrary, so the point is valueless.

The next point is that deceased was guilty of contributory negligence in riding rapidly down the runway without looking or listening for a car. This renders it necessary to determine at the outset what negligence can be charged against the deceased as being contributory so as to bar a recovery. Under the peculiar circumstances of this case, the negligence that would bar a recovery must be that of the deceased himself, not that of Hosman, the driver. The deceased was a mere lad. He had no authority over the driver nor control over the management of the horse or

wagon. If Hosman drove the horse rapidly down the runway, the boy, when he got into the wagon, had no means of knowing that he would do so. He had never been there before. After the start was made, the wagon had only twenty-two and one-half feet to go to reach the point of danger and that down an inclined runway. In going that short distance he had no opportunity either to warn the driver or to save himself. Even if the driver was negligent it cannot be imputed to the boy. In Shultz v. Old Colony Street Railway, 193 Mass. 309, the question of imputed negligence is gone into thoroughly and the decisions of the various States upon this question carefully reviewed. It was held that if one, while being driven in a carriage as a guest or companion of the person driving, is injured by a collision on a public highway caused directly by the negligence of a third person, to which negligence on the part of the driver contributed, he may recover against the negligent third person in spite of the negligence of the driver if personally he was in the exercise of all the care which ordinary caution requires. It was also held that, if such person has no ground to suspect incompetency or to anticipate negligence on the part of the driver, and the impending danger was so sudden or of such a character as not to require or permit any act on the part of such person for his own protection, such person may recover from the negligent third person even though the driver was also negligent. This doctrine is peculiarly applicable to the facts in the present case. The boy had no reason to anticipate negligence on the part of the driver, and the danger arose so suddenly and under such circumstances as not to require or even permit the boy to do anything for his protection. The same doctrine is announced and followed in Missouri. [Baxter v. St. Louis Transit Co., 103 Mo. App. 597; Zalotuchin v. Railway, 127 Mo. App. 577; Stotler v. Railroad, 200

Mo. 107, l. c. 143-148; Turney v. United Railways, 155 Mo. App. 513; Moon v. Transit Co., 237 Mo. l. c. 435.] A careful reading of the record fails to disclose any evidence that, at the time the wagon started and afterward during its journey downward, the boy omitted to do anything for his safety that he could or should have done. The presumption that he used due care is in his favor, and the remarks in Stotler v. Railroad, 200 Mo. l. c. 146-7, apply with force to him. There was no testimony as to what was done by either the boy or the driver in regard to the exercise of care on their part. Neither side, for some reason, put Hosman on the stand, who was the only one who could have testified as to what was done in this regard. At best, therefore, if there was any evidence showing negligence on the boy's part, or from which it could be inferred, the question whether the boy was guilty of contributory negligence which would bar a recovery would be one for the jury. [Turney v. United Railways, 155 Mo. App. 513.] And, even if the boy was guilty of negligence, still, under the count based on the humanitarian doctrine, if the motorman saw, or, by the exercise of ordinary care, could have seen, deceased's perilous situation in time to have avoided the injury by the exercise of ordinary care and with safety to his car, and failed to do so, still defendant is liable. We are, therefore, clearly without authority to reverse the case outright. Especially so because, the evidence is conflicting as to the rate of speed at which the horse and the car respectively approached the point of collision, and as to when the motorman could have first seen the horse and wagon emerge from the barn. Coontz, the stable hand, says the horse went down in a walk and that the car was running at a speed of thirty or thirty-five miles per hour. The motorman says the horse came down rapidly, jumping and "lunging" and that his car was traveling from ten to fifteen miles per hour and was only twenty or thirty

feet from the point of collision when he saw the horse emerge from the stable door. Coontz says he noticed the motorman when the car was 100 feet away. He says the horse at this time was going down the runway to the track, and that the motorman was not looking ahead of him but was gazing out the side window of his car at a woman in an adjacent yard, and did not see the wagon until almost on it, and then he attempted suddenly to stop. The motorman denies this. The evidence of the other persons as to the speed of the horse and proximity of the car to the stable door when the horse emerged therefrom could not have had much determinative force with the jury because their evidence shows they did not notice or see anything unusual until the sudden slackening of the car caused them to look, and at that time the car was about to strike the wagon. Of course, at this time, the horse was jumping and excited and moving rapidly because of his fear of being struck and also because, at this time, his driver was slapping him with the lines in the endeavor to get hurriedly out of the way. So that the testimony is practically limited to that of the motorman on one side and the man Coontz on the other as to what occurred at the all important moment when to see and act on the part of either side would have prevented the tragedy. Whatever negligence there was, whether on one side or the other or on both, arose at this crucial moment and not at the instant of collision. If when the car was 100 feet away, the motorman, by the exercise of ordinary care, could have seen the wagon was entering into a perilous situation and the car could have been safely stopped within thirty or forty feet, or even slackened, so as to avoid the injury, and the motorman failed to do so because his attention was attracted elsewhere, then there was culpable negligence on his part for which the defendant is liable. Or, if his car was going thirty or thirty-five miles per hour, in violation of the speed

ordinance, so that, by reason of such rapid rate, it was enabled to pounce unawares upon a traveler crossing the track with due care, believing, and having a right to believe, that the car would not run at an unlawful rate of speed, then defendant is liable. If what Coontz says is true, the jury could have found the collision was caused by defendant's negligence under either of the above alternatives. If what the motorman says is true, there was no negligence on the part of the company. Which of these two witnesses is telling the truth? Are we to answer that question, or is it for the jury to say? Of course there can be but one answer. The jury, under our system, is the final arbiter of disputed facts not in themselves wholly unreasonable or impossible. It is true there are some slight inaccuracies and perhaps discrepancies in Coontz's testimony, but not enough to justify us in saying his testimony is destroyed.

Coontz's testimony was by deposition. At the taking thereof he was asked by defendant if he had not made a statement to defendant's claim agent concerning the accident and said that he had. He was then shown his signature to a paper and identified it as his, but was not allowed to see or read the contents thereof which had been written by the claim agent, and which the witness signed without reading. Neither was his attention called to the fact that the statement contained an allegation that he (the witness) was in the harness room and did not see the accident. At the trial, defendant offered in evidence this written statement to contradict Coontz's statement in his deposition that he was standing in the door of the stable and saw the whole occurrence. The paper was properly excluded as the attention of the witness was not called to the inconsistent statement therein. The witness was not a party to the suit and before he could be contradicted by the introduction of a written inconsistent statement, a foundation should have been laid

by calling his attention thereto and giving him an opportunity to explain it or correct himself. [Wigmore on Ev., sec. 1025; Ely Walker v. Mansur, 87 Mo. App. 113.] The cross-examination of this witness was not at the trial but at the time of taking his deposition, and neither the witness nor counsel for the other side were permitted to see the paper or to know what particular contradictory statement was contained therein. Hence, at the trial, there was no opportunity to place the witness back on the stand and give him a chance to explain such contradictory statement. It was known at the time of taking the deposition that the witness would not be present at the trial, and, therefore, it was incumbent on the party holding the impeaching paper to call the witness' attention to the contradictory statement therein at that time, as that was the only time when it could be explained.

Complaint is made of the refusal of defendant's instruction "A" which sought to eliminate the charge that the car did not stop at the "safety stop" as one of the causes of the accident. The ground of this complaint is that there was no evidence that the car failed to make said stop. But while there is evidence that it did make said stop, there is also evidence from which the jury could find that it did not stop. Hence the refusal of said instruction was not error.

Defendant's instruction "B" was also properly refused since it told the jury that excessive speed of the car would not authorize a recovery unless it was the *sole* cause of the injury. Excessive speed of the car did not have to be the sole cause of the collision. If such speed combined with the failure of the motorman to keep watch and stop or slacken the car caused the collision, defendant would be liable.

Defendant prayed instruction "C" which was refused, and error is claimed. The instruction is as follows:

"Although the jury shall believe from the evidence the car in question was running at an excessive and unlawful rate of. speed, and struck the wagon in which deceased was riding, if they shall further believe from the evidence in the case, the driver of the wagon in which deceased was riding and also said deceased went upon said track without looking or listening for an approaching car, and, that the motorman of said car could not, by the exercise of ordinary care, have.. stopped or slackened the speed of the car, after he saw, or by the exercise of ordinary care could have seen, deceased in a position of imminent peril, then you will find a verdict for the defendant."

This instruction does not clearly and correctly differentiate between the negligence of the driver and the boy, but is so worded as to lead the jury to believe that the driver's negligence should be considered along with that of the boy's and that the boy was in some way connected with and affected by the driver's negligence. But, unless the boy was himself negligent, there was no contributory negligence in the case. He had a right to assume when he got into the wagon and started down the incline that, if a car approached, it would do so at a lawful and not an unlawful rate of speed. He had no means of guarding against the approach of a car at an excessive speed, and on opportunity of keeping off the track after its excessive speed could have been discovered, nor of anticipating negligence on the part of the driver. Nor can contributory negligence be inferred against him because the horse may have been driven rapidly down the runway by Hosman as testified to by the motorman. The distance the wagon had to go to get on the track was only twenty-two and one-half feet and that down an incline. In going that short distance the boy would have no opportunity to save himself or to warn the driver after they had started. And when the start was made he had no opportunity to know that the approach would

be made rapidly or in close proximity to an approaching car, nor could he do anything to prevent it. As said above, the boy could not anticipate negligence on the part of the driver or the motorman, and he could not, under the circumstances, save or protect himself after the danger became apparent. The presumption is that the boy acted with due care, and there is nothing in the evidence or the circumstances from which it can be inferred that he did otherwise. He was leaving a building down an inclined runway from which he could see a car approach in time to keep out of its way if it was going at a lawful rate of speed, but not if it was going at an excessive rate. If there is no evidence from which it can be inferred that the boy was himself guilty of contributory negligence, and he was caught on the track by reason of the swiftness of the car in rushing upon him at an excessive speed, then such speed was the culpable cause of the injury and the defendant is liable whether he had time to stop after he saw the situation or not. In such case the effect of the instruction, worded as it was, would be not only to confuse the jury as to the facts from which they could infer contributory negligence against the boy, but it would also eliminate excessive speed as one of the culpable causes of the collision. The case of Schmidt v. Railway, 191 Mo. 215, does not in any way militate against this view. In that case the circumstances and the sworn testimony both were such as to overturn the presumption of due care. But in the case we are now considering not only is there no evidence to the contrary, but the facts show that, on account of his situation, deceased had no means of guarding against the approach of a car at excessive speed, and no opportunity of keeping off the track after its excessive and dangerous speed could have been discovered. The instruction, therefore, was properly refused.

The same is true of defendant's refused instruction "E." It declared that the speed at which the car was moving and the conduct of defendant's motorman prior to the starting of the wagon out of the barn were wholly immaterial questions if the car was running less than twenty miles per hour. But the evidence of misconduct on the part of the motorman also discloses that at that time the horse had emerged from the barn. Besides, the speed of the car and the conduct of the motorman immediately before the horse emerged would tend to throw some light on its speed and the conduct of the motorman immediately after or at the instant the horse emerged. Even if the car was running less than twenty miles an hour, yet if the motorman was not looking ahead but had his attention attracted elsewhere, there would be culpable negligence for which defendant would be liable unless deceased was guilty of contributory negligence. It could not be said, therefore, that the speed of the car and the conduct of the motorman prior to the emergence of the horse from the barn were "wholly immaterial questions."

Defendant's instruction saying that defendant was not liable if the death was caused solely by an unfortunate accident, if it had any place in the case, was misleading since there was no explanation or definition of what was meant by the term accident. Again, the instruction was not applicable to the facts in the case as it ignored the real issue, namely, the presence or absence of care on the part of defendant. It was, therefore, properly refused. [Zeis v. Brewing Assn., 205 Mo. l. c. 649-50.]

An instruction was also refused defining burden of proof as meaning that "the facts and circumstances in behalf of plaintiff must be so clear and strong as to admit of no other reasonable conclusion than that the death of deceased was caused by the negligence of defendant." The court refused this and gave the

usual instruction in such cases that the burden of proof was on plaintiff and he must establish defendant's negligence, and that it caused decedent's death, by a preponderance of the evidence, and by that is meant the greater weight of the credible testimony in the case. This was a sufficient instruction on the matter.

The judgment is affirmed. All concur.