[L.A. No. 31483. July 1, 1982.]

JOE JUAREZ, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
SQUARE DEAL MACHINE COMPANY, INC., Real Party in
Interest.

**COUNSEL**

Greene, O'Reilly, Agnew & Broillet, Timothy J. Wheeler and Bruce Brusavich for Petitioner.

No appearance for Respondent.

Hast & Sabatasse, Patrick J. Hast and Gary Soter for Real Party in Interest.

**OPINION**

**MOSK, J.**—In this personal injury action, where the principles of comparative negligence apply and the votes of only nine jurors are necessary to reach a verdict (Cal. Const., art. I, § 16; Code Civ. Proc., § 618), the question is whether a juror who has disagreed with the majority on the issue of negligence may nevertheless provide the ninth vote necessary to decide the issue of how to apportion the damages among the parties. We conclude that he may: neither precedent nor reason requires an exact correlation between the nine votes that fix liability and the nine votes that apportion damages.

Joe Juarez was injured while operating a lathe supplied to his employer by Square Deal Machine Company, Inc. (Square Deal). He sued Square Deal, seeking damages on theories of strict liability and negligence. The matter was submitted to the jury on special verdicts. (Code Civ. Proc., § 625.)[1]

---

[1] Unless otherwise noted, all statutory references herein are to the Code of Civil Procedure.

By its verdicts of November 6, 1980, the jury found no design defect and thus refused to hold Square Deal strictly liable. However, it found that Square Deal, Juarez, and Juarez' employer were all negligent, and that their negligence proximately caused Juarez' injuries. It fixed Juarez' total damages at $47,875, and apportioned the negligence as follows: 25 percent to Juarez, 30 percent to the employer, and 45 percent to Square Deal. The jury was polled at Square Deal's request (§ 618), and the following responses were obtained:[2]

| | JUROR NUMBER (Y=yes; N=no) | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Special Verdict | 1. | 2. | 3. | 4. | 5. | 6. | 7. | 8. | 9. | 10. | 11. | 12. |
| 1. Was there a defect in the design of the product involved? | Y | N | N | N | N | N | N | N | Y | N | N | N |
| 5. Was defendant negligent? | Y | Y | Y | Y | Y | Y | N | Y | Y | Y | N | Y |
| 6. Was defendant's negligence a proximate cause? | Y | Y | Y | Y | Y | Y | N | Y | Y | Y | N | Y |
| 7. Was plaintiff negligent? | N | Y | Y | Y | Y | Y | Y | Y | N | Y | Y | Y |
| 8. Was plaintiff's negligence a proximate cause? | N | Y | Y | Y | Y | Y | Y | Y | N | Y | Y | Y |
| 10. Was plaintiff's employer's negligence a proximate cause? | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y |
| 11. What is amount of plaintiff's damages? ANSWER: $47,865 | Y | Y | Y | Y | Y | Y | N | Y | N | Y | N | Y |
| 12. Apportionment: Plaintiff—25% Plaintiff's employer—30% Defendant—45% | Y | Y | Y | Y | N | Y | Y | Y | N | Y | N | Y |

Upon observing that the same nine jurors had not agreed on both the existence of liability and the apportionment of damages, the parties declined to waive any defect in the verdicts and the court asked the jury to deliberate further. The next day the jury was again polled. Nine identical jurors agreed on questions 5 through 11, relating to negligence, proximate cause, and total damages. Although nine jurors also agreed on apportionment of damages, they were not the same nine who had agreed on questions 5 through 11. Following additional deliberations on November 10, the jurors unanimously reported that further

[2]The poll confirmed that the jurors had not responded to special interrogatories numbers 2, 3, or 4; those were to be answered only if the jury found a design defect in the lathe. The jury's vote rejecting strict liability is not at issue.

deliberations probably would not result in agreement on the sole remaining issue, i.e., apportionment of damages. The court then declared a mistrial.[3]

On February 10, 1981, Juarez moved for reconsideration of the mistrial order and for entry of judgment on the special verdicts of November 6. At the same time he sought relief from the statutory 10-day limit for filing his motion for reconsideration. (§ 1008, subd. (a).) The court granted the latter relief under section 473, but denied both the motion for reconsideration and the motion for entry of judgment. Juarez now seeks a writ of mandate to compel the trial court to vacate its order of mistrial and to enter judgment according to the special verdicts.

## I.

Juarez contends that the special verdicts returned on November 6 were sufficient to determine all the factual issues necessary for the entry of judgment. ▮ Square Deal counters with the argument that mandate should not issue here because (1) the failure of nine identical jurors to agree on all material special verdicts rendered the verdicts legally insufficient; (2) any error in granting the mistrial was waived by Juarez' failure to request that judgment be entered on the special verdicts within 10 days of the November 10 mistrial ruling; and (3) mandate is an inappropriate remedy to compel the trial court to reverse its discretionary action in refusing to vacate its mistrial order.

The latter two arguments are clearly without merit. Square Deal cites no authority requiring a party to request that the court enter judgment on a valid jury verdict in order for that party to have the benefit of the verdict. ▮ Although we have held that failure to object to a *defective* jury verdict before a jury is discharged prevents a party from relying on that defect to overturn the verdict (see *Henrioulle v. Marin Ventures, Inc.* (1978) 20 Cal.3d 512, 521-522 [143 Cal.Rptr. 247, 573 P.2d 465]), there is no logical reason to require an objection to a court's failure to enter judgment on a *valid* verdict. The obvious purpose for requiring an objection to a defective verdict before a jury is discharged is to provide it an opportunity to cure the defect by further deliberation. (§ 618.) No such rationale applies if the verdict is sound.

---

[3]The court later ruled that the strict liability and negligence counts were severable but that judgment in favor of Square Deal on the former should not be entered until the negligence cause of action was determined.

■ Nor is the 10-day period within which a party can seek reconsideration of a mistrial order conclusive, provided that relief is sought "within a reasonable time, in no case exceeding six months" after the order is entered. (§ 473.) Juarez' motion for relief was made within three months of the mistrial order. Furthermore, the Court of Appeal decision on which Juarez based his motion for reconsideration (*United Farm Workers of America* v. *Superior Court* (1980) 111 Cal.App.3d 1009 [169 Cal.Rptr. 94]) was not issued until November 12, 1980; Juarez discovered the decision in January 1981, and promptly moved for reconsideration. The trial court apparently determined that the delay was the result of "excusable neglect" within the meaning of section 473, and granted relief accordingly. Square Deal has not shown that the court abused its discretion in so ruling.

■ With respect to the appropriateness of relief by writ, it is evident that no appeal lies from an order granting a mistrial. (§ 904.1; *Heavy Duty Truck Leasing, Inc.* v. *Superior Court* (1970) 11 Cal.App.3d 116, 119 [89 Cal.Rptr. 598].) The unavailability of review by direct appeal raises the question whether review may be obtained by writ of mandate. (See § 1086.) Several cases have entertained petitions for writ of mandate to compel a trial court to vacate an order granting a mistrial and to enter judgment on the verdict rendered by the jury. (E.g., *Heavy Duty Truck Leasing, Inc.* v. *Superior Court, supra*; *United Farm Workers of America* v. *Superior Court, supra*, 111 Cal.App.3d 1009, 1012-1013; *Nelson* v. *Superior Court* (1938) 26 Cal.App.2d 119 [78 P.2d 1037].) ■ We have no doubt that when a trial court has erroneously refused to enter judgment on an assertedly defective jury verdict and has instead declared a mistrial, mandate is an appropriate remedy to compel entry of judgment. The situation is similar to that presented when a trial court has incorrectly refused to enter a default judgment; in that situation it is settled that mandate will lie. (E.g., *W.A. Rose Co.* v. *Municipal Court* (1959) 176 Cal.App.2d 67, 74 [1 Cal.Rptr. 49], and cases cited.) Finally, mandate is also an appropriate remedy to review an application of section 473 in order to ascertain whether an abuse of discretion has occurred. (*Nathanson* v. *Superior Court* (1974) 12 Cal.3d 355, 360-361 [115 Cal.Rptr. 783, 525 P.2d 687].)

## II.

We reach the crucial issue on the merits, i.e., whether nine identical jurors must agree both on the determination of liability and on the ap-

portionment of damages.[4] In a civil case, the concurrence of three-fourths of the jurors is constitutionally and statutorily required for a verdict. (Cal. Const., art. I, § 16; Code Civ. Proc., § 618.) Although each special verdict in the instant case commanded at least nine votes and thus constituted the necessary three-fourths majority, the nine jurors who voted for the apportionment of damages were not the same nine who reached agreement on negligence, proximate cause, and the total amount of damages. The critical jurors in this regard were numbers one and seven. Juror number one found that Juarez was neither negligent nor the cause of his own injuries. Juror number seven, on the other hand, found that Square Deal was neither negligent nor the cause of the injuries. Nevertheless, these two jurors provided the determinative eighth and ninth votes in favor of apportioning damages both to Juarez and to Square Deal.

Prior to our adoption of comparative negligence in *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393], it was well settled that in a nonbifurcated trial nine identical jurors had to agree on all elements of the ultimate verdict. (*Earl* v. *Times-Mirror Co.* (1921) 185 Cal. 165, 182-186 [196 P. 57]; *Schoenbach* v. *Key System Transit Lines* (1959) 168 Cal.App.2d 302, 305 [335 P.2d 725]; *Nelson* v. *Superior Court, supra*, 26 Cal.App.2d 119, 123; *Balero* v. *Littell* (1932) 124 Cal.App. 190 [12 P.2d 41]; 4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 269, pp. 3077-3078.) However, we are aware of only two published opinions in this state dealing with the necessity of juror consistency as to special verdicts rendered in comparative negligence cases. (*United Farm Workers of America* v. *Superior Court, supra*, 111 Cal.App.3d 1009; *Borns* v. *Butts* (1979) 98 Cal.App.3d 208 [159 Cal.Rptr. 400].)

In *Borns*, the jury returned four special verdicts. Although each verdict commanded nine votes, only seven jurors voted for all four. The opinion does not detail the voting patterns of each individual juror; but it appears that, as in the instant case, a juror who voted not to hold a party liable also provided the determinative vote apportioning damages to the same party. The trial court refused to declare a mistrial or require the jury to deliberate further. In a two-page opinion the Court of

---

[4]In *Henrioulle* v. *Marin Ventures, Inc., supra*, 20 Cal.3d 512, 521-522, the issue was presented in a different context. There, we found it unnecessary to decide "whether or not the same nine jurors must agree on each part of a special verdict" because the defendant had waived any defect in the verdict by failing to object. Because no waiver occurred here, we must address the issue.

Appeal held that the trial court erred by "entering a verdict when the same nine jurors had not agreed on each special verdict." (98 Cal.App. 3d at p. 210.) The opinion does not provide a convincing rationale for its holding; rather, it simply cites a series of precomparative negligence cases. (E.g., *Earl* v. *Times-Mirror Co., supra*, 185 Cal. 165, 182-186.)

By contrast, *United Farm Workers* declined to follow *Borns* after carefully analyzing and distinguishing each of its authorities, including *Earl*. In *Earl*, a divided court set aside the punitive damages portion of a verdict. Although nine jurors voted for $25,000 in compensatory damages and ten jurors voted for $5,000 in punitive damages, the court held the verdict defective because only seven jurors voted for both amounts. The *United Farm Workers* court distinguished *Earl* on the ground that in the case before it, all 12 jurors agreed on the total amount of damages. (111 Cal.App.3d at pp. 1014-1015.) The disagreement, as in the case at bar, was between the jurors who agreed on negligence and the jurors who agreed on apportionment.[5] The court held that after nine identical jurors agree that a party is negligent and that his negligence has proximately caused the injuries complained of, subsequent special verdicts allocating fault to that party are valid if supported by the votes of *any* nine jurors. (*Id.* at p. 1021.) The court reasoned that such a rule protects the rights of the parties yet serves judicial efficiency by avoiding "time-consuming writs, mistrials, frustrating delays and confusion for the trial judge and jury." (*Ibid.*) As an alternative ground for its holding, the court briefly observed that the asserted defect in the verdict had been waived. (*Id.* at pp. 1021-1022.)

Although the *United Farm Workers* court relied on authorities from other jurisdictions, we are convinced that it reached the correct result; those authorities have adopted a rule preferable to that of *Borns*. As the New Mexico Court of Appeal stated in interpreting a statute similar to section 618: "We believe that our holding that any ten jurors in New Mexico may agree on any issue in support of a verdict best assures attainment of the purpose of less-than-unanimous verdicts, namely, overcoming minor disagreements that resulted in 'hung' juries under the unanimity requirement. [Citation.] At the same time one can hardly argue that the result is less fair since twelve jurors must still participate. [Citation.] Thus, without sacrificing the traditional notion of justice,

---

[5]In *United Farm Workers* the jury poll revealed that nine identical jurors did not find both plaintiff and defendant negligent. Also, only eight of the jurors agreeing to the allocation of liability had found plaintiff to be negligent. (*Id.* at p. 1011.)

our interpretation of the less than unanimity rule ensures less waste of judicial time." (*Naumburg* v. *Wagner* (1970) 81 N.M. 242 [465 P.2d 521, 524].) Similarly, the Idaho Supreme Court described the "identical nine" as a "mechanistic" rule which needlessly increases the likelihood of costly mistrials without assuring consistency or fairness. (*Tillman* v. *Thomas* (1978) 99 Idaho 569 [585 P.2d 1280, 1283].)

It is contended that the authorities relied on by *United Farm Workers* do not rescue the instant verdict because they require a juror's vote to be rationally consistent. A vote against fixing liability on a party, the argument continues, is logically inconsistent with a vote apportioning liability to the same party. However, once three-fourths of the jurors have found a party negligent, we see no reason why dissenting jurors cannot accept the majority's finding of such negligence and participate in apportioning liability in accordance with that premise.

A related contention is that a juror who has voted against liability will be unable to conscientiously address the apportionment issue. This argument implies that the dissenting juror will be reluctant to assign fault to a party whom he has voted to be free of negligence, thus resulting in a compromise or otherwise inappropriate verdict. Again, we are unpersuaded. Absent evidence to the contrary, we cannot assume that a juror will ignore his sworn duties. "It is more proper to assume that when a juror is outvoted on an issue (liability) he will accept the outcome and continue to deliberate with the other jurors honestly and conscientiously to decide the remaining issues." (*Ward* v. *Weekes* (1969) 107 N.J. Super. 351 [258 A.2d 379, 381]; see also *Forde* v. *Ames* (1978) 93 Misc.2d 723 [401 N.Y.S.2d 965, 966-967].)

■ Therefore, we hold that if nine identical jurors agree that a party is negligent and that such negligence is the proximate cause of the other party's injuries, special verdicts apportioning damages are valid so long as they command the votes of *any* nine jurors. To hold otherwise would be to prohibit jurors who dissent on the question of a party's liability from participation in the important remaining issue of allocating responsibility among the parties, a result that would deny all parties the right to a jury of 12 persons deliberating on all issues. (Cal. Const., art. I, § 16; Code Civ. Proc., §§ 613, 618.) Furthermore, we agree with the *United Farm Workers* court that a contrary rule would result in "time consuming writs, mistrials, frustrating delays and confusion for the trial judge and jury—all adding to the heavy burden of the California civil trial process." (*United Farm Workers of America* v. *Superior Court,*

*supra*, 111 Cal.App.3d at p. 1021.) To the extent it is inconsistent herewith, *Borns* is disapproved.[6]

Let a peremptory writ of mandate issue as prayed.

Bird, C. J., Newman, J., and Broussard, J., concurred.

**RICHARDSON, J.**—I respectfully dissent.

I cannot agree with the reasoning of part II of the majority opinion, which dispenses with the necessity for consistency in the votes of jurors whose special verdicts determine the comparative negligence of two or more parties and apportion liability among them. As the majority acknowledges, the legal requirement that at least three-fourths of a jury must agree to a verdict in a civil case (see Cal. Const., art. I, § 16; Code Civ. Proc., § 618) has long, and uniformly, been interpreted to require that at least nine of the same jurors must agree upon all elements of the ultimate *general* verdict. (*Ante*, p. 766; and cases cited.) Without offering any rationale for their distinction, however, my colleagues depart from that requirement when those underlying elements take the form of *special* verdicts, holding that so long as nine jurors find each party liable, "*any* nine jurors" may apportion damages among them. (*Ante*, p. 768.) In my view, the well established rule which requires consistency in the votes of jurors to support a general verdict is equally applicable where the ultimate verdict rests upon specific questions denominated as "special verdicts."

In the present case, when the jury was polled on November 6, 1980, it became apparent that although each special verdict was supported by nine votes, two of the nine jurors who apportioned liability for petitioner's damages among petitioner, petitioner's employer and real party in interest (real party), had found either that real party had not been negligent at all or that petitioner had not been negligent at all. Thus, juror number 1, who found that plaintiff (petitioner) was *not* negligent, nonetheless attributed to plaintiff 25 percent of the liability for his damages. Similarly, juror number 7 attributed 45 percent of the liability for the damages to defendant (real party), although that juror specifically found that defendant was *not* negligent at all. In fact, only seven of the jurors ultimately assessing and apportioning damages among all three

---

[6]BAJI Nos. 15.32 and 15.50 (1977 ed.) are likewise inconsistent with our holding, and hence are also disapproved.

parties *found* all three parties to be negligent and the negligence of all three to be the proximate cause of petitioner's damages. (While actionable negligence traditionally involves demonstration of breach of a duty of care proximately causing actual damages [see Prosser, Torts (4th ed. 1971) § 30, p. 143], I here adopt the terminology of the special interrogatories used in this case, which obviously used the term "negligence" to refer only to the breach of the duty of care, and inquired separately as to whether such "negligence" proximately caused plaintiff's damages.)

The majority urges that the blatant inconsistency between a juror's factual finding that a party is not negligent, and his determination that such nonnegligent party is nonetheless liable to pay damages for the negligent infliction of injuries, need not be considered illogical if it can be assumed that a juror dissenting from a finding of liability will accept the majority's finding on that issue before proceeding to consider the apportionment of that liability among the parties. (*Ante*, p. 768.) What the majority does not suggest, however, is why such reasoning should be adopted in the context of a case decided upon special verdicts when it has never been applied to a case decided by general verdict in this state.

Nor does *United Farm Workers of America* v. *Superior Court* (1980) 111 Cal.App.3d 1009 [169 Cal.Rptr. 94], provide persuasive support for the majority's holding. In *United Farm Workers* the Court of Appeal found error in the trial court's declaration of a mistrial for a defective verdict on alternative grounds. Procedurally, it relied upon *Henrioulle* v. *Marin Ventures, Inc.* (1978) 20 Cal.3d 512, 521 [143 Cal.Rptr. 247, 573 P.2d 465], to conclude that defendant had waived any defect in the jury verdict by failing to object thereto and to request further deliberation thereon before the jury was discharged. (111 Cal. App.3d, at pp. 1021-1022.) However, it also addressed the merits of defendant's claim that the jury verdict was defective, declaring: "We decide that under the circumstances in this case it is not fatal to the verdict that the same nine jurors did not find both defendant and plaintiff negligent as long as nine jurors did so find, and that the award of damages was properly determined." (*Id.*, at p. 1021.)

The *United Farm Workers'* court observed that the facts supporting a finding that one party is negligent may have no necessary bearing on a finding that another party is negligent. While that observation is undoubtedly correct, it has little bearing on the crucial issue before us. Although applying the generally acceptable principle that special ver-

dicts which are *not* logically interdependent need not be approved by the same nine jurors, it stops short of the question fairly raised here: must there be consistency between a juror's apportionment of liability among two or more parties and his finding that each of those parties was culpable? Neither by the language of its holding which we have quoted (see also 111 Cal.App.3d, at p. 1019), nor by the rationale therefor which we have discussed, did the *United Farm Workers* court purport to dispense with the requirement of consistency in the votes of jurors on special verdicts whose reasonableness *depends* upon consistency.

An examination of the jury poll in *United Farm Workers*, however, does reveal a logical inconsistency which the court did not analyze, and which would appear to violate the rationale of its decision. In that case, of the 11 jurors who attributed to plaintiff 90 percent of the responsibility for his $70,000 in damages, only *8* found that plaintiff's negligence was the proximate cause of any damages at all. (111 Cal.App.3d, at p. 1011.) It would seem contrary to the fundamental purpose of our comparative negligence system—a purpose which we have identified as being "to assign responsibility and liability for damage in direct proportion to the amount of negligence of each of the parties" (*Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804, 829 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393])—to sustain a verdict imposing 90 percent of liability on a party by counting the vote of a juror who has concluded either that such party was not negligent at all or that his negligence was not the proximate cause of any damages. In addition, of course, such inconsistent conclusions simply are not reasonable, and reason is the foundation upon which jury deliberation rests. (See *Naumburg* v. *Wagner* (1970) 81 N.M. 242, 243 [465 P.2d 521, 522] [disqualifying any juror who is "guilty of irreconcilable inconsistencies or material contradictions when his votes on all issues are considered"].)

Nor does the requirement of consistency between a juror's findings of negligence, proximate cause, and damages, on the one hand, and liability for those damages, on the other, necessarily require, as the majority suggests (*ante*, p. 768), that only those jurors *initially* finding each of the parties liable may deliberate upon the apportionment of that liability among them. While the logical progression would normally appear to be from findings of actionable negligence to apportionment of liability therefor, it is apparent that a juror may change her or his mind on one or more special verdicts at any time before the jury verdict is rendered. That factor alone would appear to refute the wisdom of imposing

upon the deliberative process an artificial restriction barring each juror from fully considering and reconsidering each issue. As the majority implicitly acknowledges by its holding, a tentative vote is not cast in bronze; and so long as the ultimate product of a juror's deliberation is consistent, there is no reason to interfere with the process of "decisions and revisions which a minute [may] reverse." (T. S. Eliot, "The Love Song of J. Alfred Prufrock.")

In my view, the jury instructions given here adequately guided the jurors in the appropriate procedure. Apparently without objection, the jury was instructed generally in accordance with BAJI No. 15.32 (1977 ed.) as follows: "Each of you should deliberate and vote on each issue to be decided. However, before you may return a verdict to the court, at least nine or more identical jurors must agree on the verdict in its final and complete form, so that each of those nine or more may be able to state truthfully that the verdict is his or hers." It was also instructed more specifically in accordance with BAJI No. 15.50 (1977 ed.) that "nine or more identical jurors . . . [must agree] upon each answer required by . . . [the] directions on the special verdict form, so that each of those nine or more may be able to state truthfully that every answer is his or hers . . . ." Nothing in the instructions purported to bar jurors from full participation in the deliberative process at any point before a final verdict was rendered.

Further, while the adoption of a rule abandoning the necessity of consistency in a juror's special verdicts in this context may expedite such trials, it is not likely to be less confusing to the jury, as the majority contends, or more productive of justice. Rather, informing jurors, as the present instructions do, that they must be consistent in attributing responsibility for the payment of damages to parties whom they find to be culpable would appear to have the dual virtues of simplicity and common sense, while effectuating the underlying principle of responsibility in proportion to fault. Where the rule is both logical and clear, the likelihood of its implemention would seem greater.

Finally, as a practical matter, it does not seem to me realistic to assume that a juror who concludes that a party is not culpable would be able conscientiously to apportion financial responsibility to that party. His perception of a legal compulsion upon him to affix *some* responsibility upon a party whom he concludes is *not* responsible *at all* is more likely to cause that juror to assign to such a party an arbitrary proportion of the total liability. The introduction of such arbitrary or

speculative element into the deliberative process can only tend to render the ultimate apportionment unreliable. For this additional reason also, then, I consider it ill-advised to instruct jurors to disregard their ultimate judgment on the issues of negligence and proximate cause in apportioning damages. Whether a statute directing such procedure would be supportable we need not decide. In the absence of a clear legislative direction to such effect, however, I would hesitate to add another feat of mental gymnastics to the already formidable task which each juror undertakes in seeking to determine liability in proportion to fault in a comparative negligence case.

In my view, the requirement of consistency in a juror's votes in the present context is supportive of the entire deliberative process, encouraging reason instead of speculation in the rendering of mutually interdependent special verdicts upon which the ultimate judgment is to be entered. To sustain that essential consistency in a juror's vote, it should be required that at least nine identical jurors whose votes ultimately apportion liability between two or more parties also agree that the negligence of each of those parties was a proximate cause of the total damages assessed. The absence of that consistency in the instant case, after full opportunity for deliberation was afforded to the jury, warranted the trial court's declaration of a mistrial, and we should decline to disturb that ruling.

Kaus, J., concurred.