[Civ. No. 65738. Second Dist., Div. Four. Oct. 21, 1982.]

EUGENE PHELPS, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
ABLE AUTO ADJUSTERS et al., Real Parties in Interest.

COUNSEL

James H. Davis and Martin B. Berman for Petitioner.

No appearance for Respondent.

Hast & Sabatasse, Patrick J. Hast and Gary S. Soter for Real Parties in Interest.

OPINION

**KINGSLEY, J.**—This proceeding in mandate was initiated by a plaintiff in a personal injury action seeking to compel the trial court to enter an interlocutory judgment on certain special verdicts finding defendants derivatively liable by reason of their ratification of intentional torts committed by their agents, despite the fact a mistrial had been declared because the jury poll revealed inconsistency in the voting of jurors on issues pertaining to the comparative negligence issues in the action.

After commencement of this proceeding on June 28, 1982, the Supreme Court on July 1, 1982, rendered its decision in *Juarez* v. *Superior Court* (1982) 31 Cal.3d 759 [183 Cal.Rptr. 852, 647 P.2d 128], which announced an exception to the general rule of *Earl* v. *Times-Mirror Co.* (1921) 185 Cal. 165, 182-186 [196 P. 57], which had required juror consistency as to all issues necessary to the ultimate judgment, by holding that, *in the context of comparative negligence cases,* such consistency was not required. Because the jury voting pattern in *Juarez* is materially identical to the voting pattern in the underlying action and would, if applicable to the underlying action, require the granting of relief in these mandate proceedings, we determined that the potential effect of *Juarez* should also be considered here. We issued an alternative writ giving respondent the alternative of reviewing the special verdicts in light of *Juarez.* Respondent did not choose to do so.

ISSUES:

The principal questions presented are (1) whether *Juarez* v. *Superior Court, supra,* 31 Cal.3d 759, should be retroactively applied to the underlying action where the special verdicts and declaration of mistrial occurred prior to issuance of that opinion, and (2) if *Juarez* is to operate retroactively, does that decision apply in the present context where both comparative negligence and intentional tort liability issues are involved.

FACTS:

The essential facts are not in dispute, except where indicated. In 1978 plaintiff Phelps commenced an action for personal injuries on theories of negligence and battery, and for conversion, based on the repossession of an automobile purchased by plaintiff with financing from defendant Garfield Bank. Garfield Bank determined that plaintiff was delinquent on repayment installments and employed defendant Able Auto Adjusters to repossess the vehicle. Able employed agents who allegedly intentionally injured plaintiff in the process of repossession. On February 16, 1982, jury trial commenced and on February 24th the cause was submitted to the jury on special verdicts pursuant to section 625 of the Code of Civil Procedure. On February 26th the jury returned 15 special verdicts whereby a majority of at least nine jurors found that the negligence of defendants had proximately caused plaintiff's injuries; that plaintiff's negligence had proximately caused his injuries; that fault was apportioned 20 percent to plaintiff and 80 percent to defendants; that general damages totaled $65,000; that each of the defendants was liable for the intentional torts of Able's agents; that each of the defendants had ratified the acts of Able's agents, and that defendant Garfield Bank had committed conversion. They assessed punitive damages

against defendant Garfield in the amount of $45,000. Only eight jurors concurred in a specific amount of punitive damages against defendant Able.

The jury was polled and the following voting pattern was revealed:

JUROR POLL RESPONSES   NOTE: BLANK SPACE = YES VOTE

| Issues | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | Result |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. ABLE NEGLIGENCE | | | | | | | | | | | | | Yes: 12-0 |
| 2. PROXIMATE CAUSE | | No | | No | | | No | | | | | | Yes: 9-3 |
| 3. GARFIELD NEGLIGENCE | | | | | | | | | | | | | Yes: 12-0 |
| 4. PROXIMATE CAUSE | | No | | No | | | No | | | | | | Yes: 9-3 |
| 5. PHELPS NEGLIGENCE | | | | | | | | | | No | No | | Yes: 10-2 |
| 6. PROXIMATE CAUSE | | | | | | | | | | No | No | | Yes: 10-2 |
| 7. APPORTIONMENT OF FAULT | | | | | | | | | | No | No | | Yes: 10-2 |
| 8. ABLE LIABILITY FOR AGENT'S ACTS | | | | | | | | | | | | | Yes: 12-0 |
| 9. GARFIELD LIABILITY FOR ACTS OF ABLE AGENT | | | | No | | | No | | | | | | Yes: 10-2 |
| 9A. DID GARFIELD COMMIT CONVERSION | | No | | | | | No | | | | | | Yes: 10-2 |
| 10. GENERAL DAMAGES | | No | | No | | | No | | | | | | Yes: 9-3 |
| 11. ABLE RATIFICATION OF AGENT'S ACTS | | | | | | | | | | | | | Yes: 12-0 |

| Issues | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12. AMOUNT OF PUNITIVE DAMAGES— ABLE | | No | | No | | | No | | | No | | | Yes: 8-4 |
| 13. GARFIELD RATIFICATION OF ABLE AGENT'S ACTS | | | | | | | | | | | | | Yes: 12-0 |
| 14. AMOUNT OF PUNITIVE DAMAGES GARFIELD | | No | | | | | No | No | | | | | Yes: 9-3 |

The apparent problem revealed by the polling centers upon the special verdicts concerning the negligence of the defendants (Nos. 2 and 4) and plaintiff (Nos. 5 and 6) and apportionment of fault as between them (No. 7). Of the ten jurors concurring on apportionment of fault (80 percent to defendants and 20 percent to plaintiff), three had refused to concur in the special verdicts which found defendants had proximately caused plaintiff's injuries. The votes of at least two of these three jurors were necessary to reach the requisite majority of nine because two other jurors (Nos. 10 and 11) did not concur in the apportionment verdict.

The trial court declared a mistrial on February 26, 1982, "due to an inconsistent verdict."

On March 26, 1982, plaintiff noticed a motion for entry of a partial interlocutory judgment on special verdicts 8, 9, 9a, 10, 11, and 13, and requested that issues 12 and 14, concerning assessment of punitive damages against Garfield and Able, respectively, be retried. Plaintiff's motion was based upon the contention that the same nine jurors had concurred consistently on all special verdicts finding that defendants' acts causing plaintiff's injuries were intentionally tortious and therefore juror inconsistency on the special verdicts concerning contributory negligence were irrelevant to the finding of liability because contributory negligence is no defense to an intentional tort. Plaintiff conceded that the special verdicts concerning punitive damages (Nos. 12 and 14) were inconclusive but urged these could be retried if the award of general damages were ruled validly determined by the "intentional tort" special verdicts. Neither the record nor the petition reveals authority for plaintiff's contention that defendants

could be derivatively liable as intentional tortfeasors for the battery committed by their agents. But defendant Garfield Bank is liable for the intentional tort of conversion. Defendants filed opposition. The motion was denied May 13th. On June 28th plaintiff filed his petition with this court. We issued an alternative writ giving respondent the opportunity to review the special verdicts in light of *Juarez* v. *Superior Court, supra,* 31 Cal.3d 759, and enter a partial, interlocutory judgment for damages established by special verdicts validly determined under that decision.

DISCUSSION:

While the present proceeding in mandate was pending in this court, the Supreme Court issued its decision in *Juarez* v. *Superior Court* (1982) 31 Cal.3d 759 [183 Cal.Rptr. 852, 647 P.2d 128], on July 1, 1982 (modified July 8, 1982). *Juarez* announced an exception to the rule of *Earl* v. *Times-Mirror Co.* (1921)185 Cal. 165, 182-188 [196 P. 57], which had required that in a nonbifurcated trial nine identical jurors had to agree as to every issue necessary for entry of the ultimate verdict. *Juarez* held, at page 768, that in the context of contributory negligence cases upon special verdicts this requirement does not apply and that ''. . . if nine identical jurors agree that a party is negligent and that such negligence is the proximate cause of the other party's injuries, special verdicts apportioning damages are valid so long as they command the votes of *any* nine jurors.'' (Italics original.) The voting pattern in *Juarez* is similar to that in the present underlying action. *Juarez* observed that ''[a]lthough each special verdict in the instant case commanded at least nine votes and thus constituted the necessary three-fourths majority, the nine jurors who voted for the apportionment of damages were not the same nine who reached agreement on negligence, proximate cause, and the total amount of damages. The critical jurors in this regard were numbers one and seven. Juror number one found that Juarez was neither negligent nor the cause of the injuries. Juror number seven, on the other hand, found [defendant] was neither negligent nor the cause of the injuries. Nevertheless, these two jurors provided the determinative eighth and ninth votes in favor of apportioning damages both to Juarez and to [the defendant].'' (31 Cal.3d at p. 766.)

Accordingly, under *Juarez* the special verdicts on the comparative negligence issues in the underlying Phelps action would constitute a valid determination of those issues. Under the general rule of *Earl* v. *Times-Mirror Co., supra,* the inconsistency in the juror voting would be fatal to these special verdicts and to entry of judgment.

The critical question is whether *Juarez,* decided July 1, 1982, is to be given at least limited retroactive application to the special verdicts and declaration of mistrial in the underlying Phelps action which occurred February 26, 1982.

A. *Retroactive or Prospective Application of Juarez:*

Appellate courts have discretion, subject to certain guidelines, to decide whether a case overruling prior cases or acknowledging an exception to an established rule will operate retroactively or prospectively only.

In *County of Los Angeles* v. *Faus* (1957) 48 Cal.2d 672, 679-680 [312 P.2d 680], the Supreme Court expressly overruled prior cases in determining that the sale price of recently sold property similar to property involved in an action may be admitted as evidence of the market value of the property to be valued. The court then addressed the question of retroactive application of its new rule, stating·"The law is settled that there is no constitutional objection to an appellate court's making a choice for itself, in overruling an earlier decision, whether the new rule declared by it shall operate prospectively only or apply retrospectively. [Citations.] [¶] The determination by the court is dependent upon the equities in each case. It is the general rule that a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation and that the effect is not that the former decision was bad law but that it never was the law. [¶] A well recognized exception to this general rule is that where a constitutional provision or statute has received a given construction by a court of last resort and contracts have been made or property rights acquired under and in accordance with its decision, such contracts will not be invalidated nor will vested rights acquired under the decision be impaired by a change of construction adopted in a subsequent decision. Under those circumstances it has been the rule to give prospective, and not retrospective effect to the later decision. [Citation.]" *Faus* applied these principles to the case before it and found that the general rule of retroactive application applied. (At pp. 680-681.)

In *Westbrook* v. *Milhaly* (1970) 2 Cal.3d 765 [87 Cal.Rptr. 839, 471 P.2d 487], the Supreme Court held a section of the state Constitution requiring a two-thirds majority rather than a simple majority election vote for passage of general obligation bonds was unconstitutional. Considering whether its ruling was to be retroactively applied that court acknowledged the rule stated in *Faus, supra,* 48 Cal.2d 672, adding that the determination "turns on considerations of fairness and public policy" and that ". . . the purely prospective operation of a decision 'temporarily preserves and ap-

plies a mistaken interpretation of the [state] Constitution.' [Citation.]''
(At p. 800.) The court observed that a number of similar obligation bond
propositions had recently won approval of a majority but less than
two-thirds of the voters and that many persons might suffer adversely from
retroactive application. Application of the court's holding was limited to
elections held after that decision became final.

In *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532
P.2d 1226, 78 A.L.R.3d 393], the Supreme Court announced the rule of
comparative negligence which displaced the rule of contributory
negligence in this state and, collaterally, established the substantive
principles of law fostering its later decision in *Juarez, supra,* 31 Cal.3d
759. The *Li* court determined that the general guidelines of "fairness and
public policy" required that the new principle of comparative negligence,
which creates variations in the issues and conduct of trial in a negligence
action, should be given limited retroactive application only to actions as to
which trial had not commenced before the date the *Li* decision became final
as to that court; except that if any judgment be reversed on appeal for other
reeasons, the *Li* opinion would be applicable to any retrial. *Li* also provided
for application of its rule to the case before it, to encourage litigants to raise·
issues seeking "renovation of unsound or outmoded legal doctrines." *Li*
declined to extend its application to cases having commenced trial prior to
finality of that opinion, despite recognition that in some of those cases
litigants might have raised the identical issue yet not been fortunate enough
to have their case be the one in which the new rule was announced. (3
Cal.3d at pp. 829-830.)

■ In contrast to *Li,* the *Juarez* decision alters only the standard by
which the results of jury deliberations are to be judged. *Juarez* does not
alter the subject matter of the parties' opening arguments, the jurors'
awareness of the material issues during presentation of the evidence, or the
subject matter of closing arguments.

The voting pattern of the jury constitutes the final result of the
deliberation process of the Phelps jury. As pointed out in *Juarez,* 31 Cal.3d
at page 764, if the special verdicts were valid when entered, subsequent
recognition of that validity is not inherently precluded merely because the
correct law was announced after return of those verdicts. Such application
destroys no vested rights of the parties. Defendants' assertion that they
might have better considered settlement had they known it would be easier
for a jury to reach a valid verdict is not persuasive. First, the likelihood of a
mistrial due to juror inconsistency cannot be said to significantly, if at all,
alter the trial attorney's estimation of the ultimate jury verdict based upon
the facts of the case. The difficulty of achieving juror consistency might be

anticipated to prolong the deliberation process or require retrial, but this does not predictably alter the anticipated ultimate verdict. Second, the obsolescence of total juror consistency in the context of comparative negligence cases was to some extent foreshadowed in *United Farm Workers of America* v. *Superior Court* (1980) 111 Cal.App.3d 1009, 1018 [169 Cal.Rptr. 94], wherein the Court of Appeal held that the general rule of *Earl* v. *Times-Mirror Co.*, *supra*, 185 Cal. 165, 182-186, did not require total juror consistency in comparative negligence cases and that the respective special verdicts concerning plaintiff's and defendant's negligence and proximate causation of injuries need not be concurred in by the same majority of jurors.

The contention that limited retroactive application of *Juarez* would result in an avalanche of applications in cases in all stages of litigation, including those already reduced to judgment, is also unpersuasive. As pointed out in *Juarez*, 31 Cal.3d at page 765, a party may seek vacation of a declaration of mistrial and the entry of a partial interlocutory judgment under Code of Civil Procedure section 473 up to six months after the declaration of mistrial. In this connection it must be noted that the *Juarez* decision is founded principally upon the consideration of promoting judicial economy. It is clear that such economy would not be served in a case where a second trial has commenced or resulted in judgment. Thus, only in cases in which no retrial has commenced and resulted in judgment would public policy be served and litigants entitled to move for vacation of the mistrial declaration and seek application of the *Juarez* rule. Cases wherein the judgment on retrial is reversed might also be entitled to the limited retroactive application of *Juarez* under this rationale.

Similarly unpersuasive is defendants' assertion that application of *Juarez* to the underlying action will result in no saving of court time at a second trial. Defendants claim that "the issues" of the conduct of the parties and the amount of general damages will have to be retried in any event because assessment of punitive damages must be predicated upon the outrageousness of the conduct and bear some reasonable relation to the general damages awarded, citing Civil Code section 3359. The first reply to this assertion is that negligence trials are often bifurcated at the outset into liability and damages phases, to be heard and determined by different juries. In *United Farm Workers of America* v. *Superior Court, supra,* 111 Cal.App.3d 1009, 1018, it was noted that "California trial courts can and do proceed in bifurcated trials with no requirement that only the jurors who find liability in the first phase of the trial may participate in the second phase to find damages. [Citations.] The requirement presumed obviously makes no sense if an entirely different jury determines damages." While *United Farm Workers* was speaking with negligence cases in mind, there is

no practical bar to a second jury hearing the same facts if they and the court are saved the effort of redetermining numerous issues preliminary to fixing punitive damages. Second, and more significant, there is still a saving of court and jury time in the deliberation process because although the second jury might hear the same evidence, it would be spared the task of deliberating on 10 preliminary issues concerning comparative negligence and general damages.

*Juarez* implicitly suggests its holding may be given limited retroactive application. In resolving a preliminary procedural objection to the timeliness of plaintiff Juarez's motion in the trial court to vacate the declaration of mistrial, the *Juarez* court pointed out that the special verdicts there were returned November 6 and mistrial was declared, due to the juror voting pattern, November 10, 1980. Three months later on February 10, 1981, plaintiff Juarez moved for reconsideration of the declaration of mistrial. After noting that the 10-day period prescribed in section 1008 of the Code of Civil Procedure is not conclusive if relief is sought no later than six months after mistrial, the court stated "Furthermore, the Court of Appeal decision on which Juarez based his motion for reconsideration (*United Farm Workers of America* v. *Superior Court* (1980) 111 Cal. App.3d 1009, . . .) was not issued until November 12, 1980; Juarez discovered the decision in January 1981, and promptly moved for reconsideration. The trial court apparently determined that the delay was the result of 'excusable neglect' within the meaning of section 473, and granted relief accordingly. Square Deal [defendant] has not shown that the court abused its discretion in so ruling." (At p. 765.) Thus, by implication, *Juarez* indicates that new case law creating an exception to *Earl* v. *Times-Mirror Co.*, *supra,* 185 Cal. 165, in the context of special verdicts on comparative negligence issues could be given retroactive application.

Finally, with regard to the question of retroactivity, it is significant to reiterate that *Juarez* did not overrule *Earl, supra,* 185 Cal.165, but rather announced an exception to *Earl.* Accordingly, while the authorities discussed above provide guidance as to the question of retroactive application of *Juarez,* this distinction should not be wholly overlooked in analysis.

B.   *Severability of Special Verdicts:*

Given that *Juarez* applies to the underlying action, the special verdicts necessary to the award of general damages were concurred in by a proper majority of jurors. As observed earlier in this discussion, the special verdicts are uncertain as to the amount of the total general damages that is subject to apportionment. Specifically, it is not clear whether special

verdict number 10, stating the total general damages, includes damages for the conversion and battery. It appears that the special verdicts have not separated the damages on the basis of negligence as opposed to conversion and battery so that the apportionment ratio determined by special verdict number 7 may be applied to verdict number 10. Defendant noted in opposition to plaintiff's motion below that section 3336 of the Civil Code limits damages resulting from conversion of personal property essentially to the value of the property converted. That opposition does not clear up the apparent lack of detail in these special verdicts, but asserts it would be improper not to apportion the $65,000 general damages found by special verdict number 10.

■ Defendants contend in their return that even if the special verdicts validly determine the ultimate award of general damages, it is improper and contrary to authority to enter an interlocutory judgment on the negligence liability issues when less than nine identical jurors have concurred on every special verdict submitted to the jury. They rely upon *Bank of America* v. *Superior Court* (1942) 20 Cal.2d 697 [128 P.2d 357], as holding that a determination on certain of multiple causes of action may not be severed from the remaining undetermined causes because there may be only one "judgment" in an action. However, it is evident that the opinion was referring to a "final judgment" in the trial court which wholly determines all issues at the trial level and terminates trial court jurisdiction, as opposed to severable interlocutory determinations on different causes of action. The case involved a trial court sustaining of a general demurrer to a four-count complaint without leave to amend. On appeal the Court of Appeal found that the demurrer as to the first two causes had been properly sustained without leave, because they failed to allege certain critical elements of the causes attempted to be stated therein. But the court reversed as to the third and fourth causes and remanded to the trial court. The trial court then allowed plaintiff to amend the complaint to add the very critical allegations to the first two causes that had been held fatal to those causes. Defendant contended that because the sustaining of the demurrer without leave to amend had been affirmed on appeal, that was the law of the case and precluded the trial court from allowing those causes to be cured by amendment. It was there held that a trial court has discretion to allow amendment of pleadings or change its ruling on a demurrer at any time up to entry of final judgment and that that discretion exists after a case has been reversed on appeal and remanded as though the case were never dismissed and appealed. The court stated "There cannot be a separate judgment as to one count in a complaint containing several counts. On the contrary, there can be but one judgment in an action no matter how many counts the complaint contains. [Citations.] . . . The law contemplates but one final judgment in a cause." (At p. 701.)

Plaintiff, on the other hand, relies upon *People* v. *City of Barnes City* (1930) 105 Cal.App. 618 [288 P. 442], as authority for the validity of severance of portions of a judgment. *Barnes City* involved an appeal from an order vacating a default judgment because that portion of the judgment reciting the factual determination that Barnes City was formerly an unincorporated territory within the corporate limits of the City of Los Angeles was an issue not framed by the complaint (which sought the annullment of the proceedings whereby Los Angeles consolidated the City of Barnes) and it was thus beyond the jurisdiction of the trial court to enter judgment upon. The trial court vacated the judgment in its entirety. (At p. 621.) The Court of Appeal held that, assuming one portion of the judgment was in fact void, the trial court had no jurisdiction to declare void the entire judgment. "That portion of the judgment declaring that the territory was unincorporated was a severable item, not involved with and wholly unnecessary to the remainder of the judgment which annulled the incorporation proceedings of the defendant . . . ." (At p. 622.) By analogy, separate special verdicts determined by a jury may be deemed validly determined although remaining special verdicts were not decided.

Consistent with this reasoning, section 437c of the Code of Civil Procedure provides for entry of orders determining that certain issues are "without substantial controversy." Such procedure results in a final determination at the trial court level of certain issues while leaving others to be determined at trial, with judgment to be entered only after all issues have been determined. No logical reason appears for dissimilar treatment of jury determinations on special verdicts on comparative negligence issues that satisfy applicable standards for the ultimate general damages verdict. The function of both procedures is to promote judicial economy by narrowing the issues upon which evidence must be adduced at trial and upon which a subsequent jury must deliberate and decide.

Neither does this result conflict with the holding of *Earl* v. *Times-Mirror Co., supra,* 185 Cal. 165, at pages 182-186. *Earl* involved an award of general damages and an award of punitive damages for libel. Because the nine jurors who concurred as to the amount of general damages were not the same jurors who concurred as to the amount of punitive damages (only seven of the ten jurors concurring as to punitive damages had constituted the majority of nine who concurred as to the general damages), *Earl* held that the assessment of punitives necessarily depended upon prior agreement in assessment of generals and therefore nine identical jurors had not concurred as to the total award of damages. The verdict for punitive damages was held invalid, the verdict for general damages stood. Under *Juarez* the comparative negligence special verdicts in the underlying Phelps action are constituted by sufficiently consistent juror voting. Thus, these

verdicts independently justify the special verdict on general damages and apportionment and are not, under *Juarez* or *Earl,* dependent upon determination of the special verdicts on punitive damages. The remaining issues of what amount, if any, of punitive damages are to be assessed, may be determined upon a retrial of those issues alone.

Review of the special verdicts reveals that they do not include a break-down of general damages as between damages resulting from intentional torts (conversion and battery) and damages resulting from negligence. The latter damages are subject to apportionment under the formula stated in verdict number 7, while the former are not. Accordingly, upon retrial of the remaining issues below, the trier of fact should also determine what portion of the total general damages of $65,000 is subject to apportionment of fault and what portion is not.

C. *Timeliness of Plaintiff's Trial Court Motion to Vacate the Declaration of Mistrial:*

■ Defendants contended in their opposition below and in their return to the alternative writ that plaintiff may not be afforded any relief because of the untimeliness under section 1008 of the Code of Civil Procedure of his motion for an order directing entry of a partial interlocutory judgment. Defendants assert, without any supporting case authority, that under section 1008 the jurisdiction of a trial court to vacate its declaration of mistrial terminates 10 days after mistrial is declared.

This contention is refuted by *Juarez,* which resolved a similar procedural objection of untimeliness. *Juarez,* concluded: "Nor is the 10-day period within which a party can seek reconsideration of a mistrial order conclusive, provided that relief is sought 'within a reasonable time, in no case exceeding six months' after the order is entered. (§ 473.) Juarez' motion for relief was made within three months of the mistrial order. Furthermore, the Court of Appeal decision on which Juarez based his motion for reconsideration . . . was not issued until [two days after the declaration of mistrial]; Juarez discovered the decision [two months later] and promptly moved for reconsideration. . . ." (31 Cal.3d at p. 765.)

From this it is evident that section 1008 of the Code of Civil Procedure does not terminate the trial court's jurisdiction over plaintiff's March 26, 1982, motion. The present record gives no indication that the trial court denied plaintiff's motion because it was untimely. In any event, because it has been determined that *Juarez* should be given limited retrospective application, and the underlying action falls within that application, it would

not promote the interests of justice to deny that application under the circumstances of the present proceeding. When the *Juarez* decision was issued, plaintiff's petition for mandate was pending before this court. By its intervention in the form of issuance of the alternative writ referring expressly to *Juarez,* this court led plaintiff to believe the issue of the retroactive effect of *Juarez* would be decided by this court if respondent did not comply with alternative (a) of the writ. Under these circumstances it would be unjust to conclude that plaintiff would not otherwise have submitted a new motion to respondent prior to August 26, 1982, urging application of *Juarez* in the underlying action. Such a motion would be no less entitled to determination on the merits than was the successful motion to vacate in *Juarez.*

CONCLUSION:

Let a peremptory writ of mandate issue directing respondent to vacate its order of February 26, 1982, in Los Angeles Superior Court case No. NEC 65738, entitled Eugene Phelps v. Able Auto Adjusters et al., and reconsider the special verdicts returned that date in conformity with the views expressed in this opinion.

Woods, P. J., and Amerian, J., concurred.

The petition of real parties in interest for a hearing by the Supreme Court was denied January 5, 1983. Richardson, J., and Kaus, J., were of the opinion that the petition should be granted.